172630 Western Missouri Joe Levitt v. Merck & Company Thank you, Your Honor. May it please the Court. You just heard argument trying to give content to a 100-year-old statute that establishes capable of ascertainment as the legal standard for when Missouri's statute of limitations begins to run. But in this case, no matter how you slice it, we don't have to wonder whether the causal theory that underlies appellants' claims here were capable of ascertainment because, indeed, it is undisputed that they were, in fact, ascertained, discussed, contemplated in each forum where one reasonably would expect a subject such as this to have been entertained in the medical community. Appellant's own complaint at paragraph 21 discusses an article in the Journal of the American Medical Association that, in their words, revealed the association between VIOX and the potential association with cardiovascular events. Counsel, it's not an issue of whether the medical community knows, but it's an objective test as to whether a reasonable person would know. It's an objectively defined test that asks whether or not, that measures the question of whether or not a reasonably prudent person would be able to ascertain the potential causal theory. And courts defining Missouri's standard of limitations law have asked, what's the appropriate measure? How do we answer a question when it is objectively defined as to whether or not something is objectively capable of ascertainment? And our position here is, and I'll talk in a moment about what we think the minimal showing must be in order to establish that based on Missouri case law. But given that the scientific community, the medical community, the news media, including not just the articles that Appellant's counsel referenced, but also... Didn't they say there was a possible association? And to finish out the question, how does that make it clear to a reasonable non-expert that this causation actually exists? So you're right that it does not... The article that's referenced in Appellant's complaint, and there are others as well, and the news media articles, and the segment on CBS's early morning show, and complaints that were actively filed more than five years before Appellant brought her lawsuit, discuss the potential causal theory that underlies the Appellant's claim that she brought in 2006. It's not required under Missouri's law that there be a scientific consensus, that there be agreement in the scientific community or medical community that something is absolutely associated with another thing. Indeed, if that were the standard, we would sit here today in 2018 without the statute of limitations having run, as this causal theory continues to be a matter of controversy, and Merck continues to disagree with Appellant's causal theory. But that's not the question that we are charged with in determining whether or not the statute of limitation runs, which puts somebody on inquiry notice, giving them then five years to bring a lawsuit. It's undisputed here that more than five years before this lawsuit was brought, we had awareness in the medical community. Appellant's own complaint talks about that. We had awareness in the forms of... Awareness of what? What does the complaint say precisely that you're relying on that says the medical community had awareness? Sure. You're talking about paragraph 21? Yes. If your honors would be interested in looking at that, it's paragraph 21 of Appellant's complaint. I'm looking at it. What precisely are you relying on? Well, paragraph 21 of Appellant's complaint refers to an August 2001 publication in the Journal of the American Medical Association, which is not the first report about this VIGAR study. This is a randomized controlled study that talks about this association that was revealed in that study. How do we know it's not the first report? Well, it refers... This article, this JAMA publication, refers to a publication in the New England Journal of Medicine, which is the initial report of the VIGAR results from the early months of 2000. So this is now in 2001, August 2001. A different group of researchers is assessing the data that previously had been reported. And as Appellant puts it in her complaint, their allegation is that this is what... This is showing what Merck had concealed, that the relative risk of developing a confirmed adjudicated thrombotic cardiovascular event among Vioxx users in Merck's trials, including VIGAR, and goes on to describe the specific statistical significance, the relative risk, and so on. So it's Appellant's own allegation here that this study, this publication, more than five years before she filed her lawsuit, is what revealed the association that now underlies her theory of the case. I don't think it's reasonably disputed that there's awareness in the medical community. This isn't a blog post from somebody's mother's basement. This isn't a random comment on a message board. This is the Journal of the American Medical Association repeating a discussion that resounds not just in the medical community but well outside of it. Again, the Wall Street Journal, the Washington Post, the St. Louis Dispatch, the CBS's nationally syndicated early morning show. Are those in the record? The Washington Post is in the record? Yes, those are in the record. I would direct the court to the opposition brief. Counsel, is it proper for the district court to consider that evidence on a motion to dismiss? Yes, Your Honor, in this case it is. If the court below had considered it for the truth of the matters asserted therein, that might be an issue we'd have to discuss. But as the court clarified when Appellant brought a motion for reconsideration below, the court was taking notice of the fact that they exist and for purposes of discerning whether or not there was notice, not as to the actual substance or whether they were correct or not. So that's not a matter of, I think, real controversy here. Well, I think it is a matter of controversy. They've argued that it was improper for the court to rely on things that were outside the complaint. And the judge didn't cite the Washington Post or the St. Louis Post-Dispatch, so I don't know if we can say the court took judicial notice of them at all anyway. Well, I think you're right. The court, I think, below, as I understand the order below, didn't cite every piece of evidence to establish that there was awareness, not just in the medical community, but resounding well beyond it. But that's part of the record, and we cite to those, as we did below, that extensive record in our opposition brief at pages 12 through 14. We provided a chart for the court that kind of ticks through all the places where there's awareness demonstrated. What the court found below... I'm sorry, Judge Kline. Didn't the Giles case reject the theory that the district court relied on here? I don't think so, Your Honor, and here's why. The Giles case, as my friend Mr. McClain described it himself, is a case that concerned delayed manifestation of disease, in other words, a delayed diagnosis case. It fits with Elmore. They're both delayed diagnosis cases. In other words, the Giles case, as it fits with a long line of cases that simply say, under Missouri law, you have to have been diagnosed with the disease that would then underlie your claim for the statute of limitation to have run. So, yeah, that's the way it was framed up for the court in Giles. That's the issue that the Giles court addressed, and in fact, I would direct the court to the ruling in Giles where it says respondents have not met their burden of showing that Giles' condition was capable of ascertainment. So the question there was whether or not he had been informed of a diagnosis. That's not an issue in this case. So the second thing I would say about Giles, it is true the Giles case has dicta that talks about how, based on whatever facts are at play there, the scientific community was only beginning, right, only beginning to piece together a connection. We know from Mr. McClain's brief, he indicated that he was counsel for the opponent in that case, their brief, and I can provide the Westlaw citation if you'd like, indicates that in that case there was no publications that would indicate awareness in the medical community. Counsel, would you agree that the relevant facts are at least in dispute? No, I would not agree with that. The facts that are material here for resolving this question are entirely undisputed. It is undisputed that there is awareness in the medical community. Appellant's own complaint, paragraph 21, talks about that. It's undisputed that these articles in the news media exist, both print media and television. It's undisputed that actual plaintiff's lawyers, on behalf of actual individual claimants, were already filing lawsuits, not that their statute of limitations triggered, they were filing lawsuits all more than five years before this appellant brought hers. This is not a case that requires the court to explore the boundaries or to define the outer limits of Missouri's limitations law. How did the fact of other lawsuits get into the record? Again, that's something that was cited below and again in our opposition brief, and I believe that's mentioned in the court below's order, that other individuals had already brought lawsuits more than five years before the appellant filed her suit. Again, not a matter of dispute. Do you think the district court relied on those? I think the district court, the fairest reading, I think, of the district court, the district court's opinion is that they... I'm not talking about fair reading. I'm just saying, did he talk about other people having filed lawsuits? I apologize, Your Honor. I'd have to look back at the order to see if that is something. I don't remember that, so that's why I'm asking you. I don't think it's a question of fair reading. I think it's just a question of whether he did or didn't. Did or didn't, yeah. Understood. It is undisputed that that, in fact, happened. It's something that we cite, too. It's a matter of public record, and it's cited, too. You think the court of appeals should take judicial notice of it in the first instance? I think the court of appeals could. It's not a matter of dispute. It's a matter of public record. The appellant here has argued that certain... I think the appellant has incorrectly characterized the record here to be something about just one article from New Jersey. That's not a fair characterization. I think this is, again, something that doesn't ask this court to define the outer limits of this law. The court below indicated that it reached its determination with, quote, little difficulty, and it didn't cite every last piece of the record in order to reach that determination because under any reasonable application of an objectively defined capable of ascertainment standard, appellant's causal theory was capable of ascertainment more than five years before she filed this lawsuit. Indeed, it was ascertained, not just in the medical community. Now, we have contended that the rule that has been applied by courts applying Missouri limitations law about what is minimally required under Missouri law is a demonstration that there is awareness in the medical community. I've obviously argued that the awareness here goes well beyond that, but courts looking at this question and trying to apply it in an objective, not a subjective, manner have asked the question of whether or not there's awareness in the medical community. There's been some discussion of the Ahearn case. The Ahearn case is a Missouri court of appeals case from 1987, and my recollection of 1987 is that there was no Internet. Now, in that case, the individual plaintiff was diagnosed with adhesive arachnoiditis, which I understand to involve inflammation of the central nervous system, not anything having to do with spiders. And in that case, the individual plaintiff knew that she had a diagnosis, but she did not know the cause. And in fact, there's some indication in that record that she had been misled in some way about what the cause was. And the statute of limitations ran at the time of the diagnosis the court determined because the medical community had awareness, notwithstanding plaintiff's own lack of knowledge. And that's because it's an objective test. That's what Powell makes clear, that this ought not be applied in a subjective way. And the rule, frankly, that the appellant is, I think, advancing here is one that inevitably would careen Missouri's law away from an objective standard and toward a subjective one that would ask this court to fact find and to account for appellant's personal and subjective experience, knowledge, and understanding. The courts that have applied this question of how do you measure from an objective perspective whether something is capable of ascertainment have quite reasonably looked to the awareness of the medical community in cases involving complicated medical science and products liability matters, where that's the form one would expect for a discussion to be taking place. And again here, I think this goes well beyond that. It got popular press attention and actual individuals bringing actual lawsuits. Mr. McLean has talked about the Miller case, Miller v. Mobe, which is not a Missouri court case. It's a case from almost 30 years ago. That case is problematic for at least two reasons. First, Miller predicts and, in fact, pins its ruling on its prediction that the Ahearn case, the Missouri appellate court case, would not last. And that prediction has proven to be untrue. Ahearn continues to be the case that courts look to, while Miller has not been adopted by any court asking this question under Missouri law. The second thing I would say about Miller is that it turns mostly on the Kessner case. The opinion in Miller says this Kessner case is the thing that tips the balance for us. The Kessner case is not only a delayed diagnosis case. The decision doesn't even turn on the question of the second prong about whether the causation link is capable of ascertainment. It's a question about whether or not the person was diagnosed, like Elmore, like Giles. But in addition to that, the Kessner case doesn't even apply Missouri statute of limitations law. The Kessner case is about the Federal Employer's Liability Act, FELA, which applies a non-objective standard. That's, I think, why courts applying Missouri law and trying to understand how you can objectively measure what's capable of ascertainment and what's not have not relied on Miller, but instead have relied on Ahearn and the other cases that have adopted this standard. I think there's been some... May I continue? I just noticed that I'm out of time. Your time has expired. Thank you for your argument. We appreciate your presentation, and we'll hear from counsel on a very brief rebuttal. 35 seconds, as I recall, Judge. Very briefly, counsel's incorrect about Ahearn, and, in fact, Giles addresses Ahearn in this fashion. Ahearn, however, is not on point and doesn't aid respondents. In Ahearn, the plaintiff was diagnosed with a condition which gave rise to a cause of action, this back injury, acnoritis, more than five years before she filed her suit. And the condition between acnoritis and the die had been known in the scientific community for decades. So it's not our case, and, in fact, Giles rejects it as being controlling and says that's a much different situation than when you have the scientific community, in its own case, was only beginning to piece together a connection. I think that's at least relevant in terms of what was reasonable for this woman, and I think that we at least should have this decided as a factual issue, not on a motion to dismiss. Thank you. Very well. Thank you to both counsel for your arguments. The case is submitted, and the court will file an opinion in due course. You may be excused. Please call the next case for argument. Kimberly Mincy v. City of Little Rock.